# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA LUPIAN, an individual,<br><br>                        Plaintiff,<br>  vs.<br><br>CENTRAL VALLEY RESIDENTIAL BUILDERS, L.P., etc., et al.,<br><br>                       Defendants. | CASE NO. 10cv2270-LAB (WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

      This is a wage and hour case. Lupian, who worked for Defendants as a sales agent from October 2003 through September 2009, accuses them of denying her overtime pay in violation of the Fair Labor Standards Act and California's Business and Professions Code. Now pending is Defendants' motion for summary judgment. The motion actually has nothing to do with the merits of Lupian's overtime claim, though. Defendants' argument is that Lupian is judicially estopped from bringing this case in the first instance because she failed to disclose her claim against Defendants when she filed for bankruptcy in 2010.

## I.  Factual Background

      Lupian stopped working for Defendants (it appears she was terminated) in September 2009. She received a severance package, and in exchange she released any claims she may have had against Defendants. The parties agree on that much.

      According to Lupian, in November 2009, just a couple of months after she was terminated, she talked to a lawyer about suing Defendants for unpaid overtime wages, and that lawyer advised her that she didn't have a viable claim. Lupian followed that advice.

Fast forward to March 25, 2010. On that day, Lupian and her husband filed for bankruptcy in the Eastern District of California. In her petition, she didn't mention any overtime claim against Defendants. In fact, in her Schedule B, next to the category "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights of setoff claims," Lupian indicated "None." The parties also agree on this.

Approximately one month later, on April 23, as her bankruptcy was still pending, Lupian retained Steven Waisbren, the lawyer who eventually filed this case. According to Lupian (and Waisbren), this didn't mean very much, because the viability of her claim was dubious. Waisbren was essentially retained just to do research and determine whether it made sense to file a lawsuit:

> However, the viability of my claims, at least in the opinion expressed by Mr. Waisbren, was in question. Mr. Waisbren advised me that he would conduct necessary investigation, analysis, and research to determine my options, if any, and that I would have to execute a retainer agreement for that purpose. Mr. Waisbren further advised me that I should not have any expectations with respect to a potential claim in light of the reservations he had expressed. Mr. Waisbren stressed that he would not file legal action until, or unless, he felt confident there was probable cause to do so. I relied exclusively upon the advice of Mr. Waisbren regarding whether my claim had any merit. (Lupian Decl. ¶ 8.)

According to Defendants, however, this meant that Lupian believed she had a claim against Defendants and had retained Waisbren to pursue it. This spin matters, of course, because it informs the question whether Lupian had a claim against Defendants while her bankruptcy was pending, and that should have been disclosed.

On May 15, 2010, Waisbren sent a demand letter to Defendants on Lupian's behalf. (Mot. for SJ, Ex. 10.) Again, the parties dispute the significance of it. Lupian paints it as just part of Waisbren's investigation into the merits of her claim, an effort to simply "determine [Defendants'] position" and "seek[ ] some settlement posture from [D]efendants." (Opp'n Br. at 6.) Defendants paint it as a full-fledged claim. The Court has to side with the Defendants here. The subject line of the letter read, "DEMAND FOR UNPAID WAGES AND PENALTIES FOR VERA LUPIAN" and "OFFER TO ENGAGE IN PRE-LITIGATION

SETTLEMENT DISCUSSIONS." It began, "This law firm represents Ms. Vera Lupian in a claim for unpaid wages (including overtime wages), interest and penalties against the above-named entity and individuals." It said, "Since a legal claim is now pending, you and your company are hereby placed on notice and instructed to preserve all paper and electronic documents concerning the matters alleged herein." The unambiguous message in the demand letter was that Lupian believes she has a viable claim against Defendants, and that it's in everyone's interest to settle up front rather than incur the protracted and expensive costs of litigation: "We believe it is in everyone's best interest to resolve this matter as quickly as possible in order that a fair resolution can be reached with a minimum of expense." There is no fair reading of the May 15 demand letter that supports Lupian's position that "it was never Waisbren's intention to file legal action until, or unless, he felt confident that there was probable cause to do so." (Opp'n Br. at 6.) The demand letter is overflowing with that confidence.

The same can be said of a follow-up letter that Waisbren sent Defendants' counsel on June 10, 2010, in which he valued Lupian's claim at $248,596.71. (Mot. for SJ, Ex. 11.) That letter said, "[I]t is our intention to pursue causes of action not only against McMillin Homes/Central Valley Residential, but also the individuals identified in that letter . . . ." It asked Defendants to stipulate to tolling the statute of limitations, or else "I will need to file a complaint immediately in order to otherwise toll the statute." There is no way to reconcile those statements with Lupian's claim in her opposition brief that "it was never Waisbren's intention to file legal action" and that it "was not known when, or if, a complaint would be filed." (Opp'n Br. at 6.) Everyone knows the difference between advancing a legal claim and merely investigating one, and there's no doubt that Waisbren was doing the former. (Defendants, according to Lupian, refused to stipulate to tolling the statute of limitations.)

On July 7, 2010, *after* Lupian retained Waisbren and *after* he sent demand letters to Defendants on her behalf, Lupian was discharged from bankruptcy. (Mot. for SJ, Ex. 5.) There is no dispute that Lupian never amended her petition to include her claim against Defendants, nor did she ever disclose to the bankruptcy court that she had retained

Waisbren to pursue that claim while her bankruptcy was pending.

While Lupian's last formal demand letter was sent on June 10, 2010, counsel for Defendants, Evelyn Wiggins, claims that between June 10 and November 2010 she spoke to Waisbren multiple times about Lupian's demand. (Wiggins Decl. ¶ 5.) According to Waisbren, this time was devoted to his "ongoing investigation, analysis, and research to determine the viability of Ms. Lupian's potential claims." (Waisbren Decl. ¶ 10.) There again, the parties are spinning their back-and-forth in the way that best suits their arguments. As Defendants see it, Lupian was pursuing a real claim and they were negotiating with Waisbren; as Lupian sees it, Waisbren was just continuing to feel Defendants out, research Lupian's claim, and determine whether a lawsuit made sense. The Court, still, finds that Lupian's position cannot be reconciled with the language and spirit of the demand letters. In any event, on November 4, 2010 Lupian filed this case. She claims that she wasn't in regular touch with Waisbren during the time that he sent the demand letters, and wasn't aware she had a viable claim, or that Waisbren would file a complaint, until late October 2010. (Lupian Decl. ¶ 9.)

Lupian still didn't amend her bankruptcy petition, however. She insists this wasn't a deliberate move on her part to mislead creditors or the bankruptcy trustee. Rather, she was distracted by a challenging personal life and had been relying "on the delayed decision of counsel whether it would be feasible to pursue litigation." (Lupian Decl. ¶ 10.) On January 19, 2011, approximately two months after Lupian filed her complaint, Defendants' counsel Wiggins notified Waisbren in writing that Defendants believed Lupian was equitably and judicially estopped from suing them because of her failure to disclose her claim during bankruptcy.

> Please know the defendants stand by the position that this action is without merit because Ms. Lupian failed to disclose this claim in the Chapter 7 bankruptcy proceeding she filed in court in 2010. Courts have consistently held that a debtor who fails to disclose a claim in a bankruptcy proceeding has no standing to sue, or will be barred from pursuing any subsequent claim by equitable and judicial estoppel . . . ." (Mot. for SJ, Ex. 13.)

Then, on March 21, 2011—approximately four months after suing Defendants and two

months after they suggested her claims were estopped—Lupian filed a motion to re-open her bankruptcy to disclose her claim. That motion took the position that Lupian takes now, namely that she didn't know of her claim when she filed for bankruptcy or when her bankruptcy was pending:

> The debtor needs to reopen this case to disclose an asset they have discovered which was not scheduled as an asset when the case was filed. Because the asset has potential non-exempt value, it is the Debtors' opinion that a Trustee should be appointed . . . .
>
> The undisclosed asset consists of a claim that the Debtors discovered they may have against McMillin Homes, Mrs. Lupian's former employer arising from labor code violations all of which occurred pre-bankruptcy. The Debtors were unaware of the claim when they filed Chapter 7. The Debtors had thought that they might have a claim and consulted an attorney in November 2009. The attorney told them us [sic] at that time that they did not have a viable claim. After the Debtors filed their bankruptcy and after the case was closed, the Debtors received a letter from the attorney indicating that they might have a viable claim. The Debtors consulted bankruptcy counsel and were informed that any such claim would constitute an asset of the bankruptcy estate that they had a duty to disclose. (Mot. for SJ, Ex. 6.)

Obviously, there are some misrepresentations in there. First, for the reasons the Court has given above, it is a distortion of the facts to suggest that Lupian didn't know she had a claim until after she was discharged from bankruptcy. She retained Waisbren, and Waisbren sent two explicit demand letters to Defendants, while Lupian's bankruptcy was pending. Second, the "attorney" who said Lupian had no claim, and then might have a viable claim, was not the same attorney. Third, it's suspicious that Lupian would suggest *bankruptcy counsel* told her the claim had to be disclosed as an asset of her estate when two months prior Wiggins had taken that position in a letter to Waisbren. Fourth, Lupian neglected to mention that not only did she "discover" a claim, but in November 2010 she'd actually sued Defendants. In any event, the bankruptcy court granted Lupian's motion the day after it was filed.

In early October 2012 Lupian filed an amended complaint in this case, adding bankruptcy trustee Trudi Manfredo as a Plaintiff. Shortly thereafter, on October 26, Defendants filed a motion to dismiss Lupian from the case as an individual, on the theory that Manfredo is the rightful party in interest *and* that Lupian should be barred by judicial

estoppel anyway for failing to disclose her claim against Defendants while her bankruptcy was pending. What's interesting about Defendants' motion to dismiss is that it was limited to Lupian's claims as an individual. They even conceded that "[t]he Trustee may have a right to attempt to prosecute the claims stated in this action." (Mot. to Dismiss at 10.) That's at odds with Defendants' present argument that judicial estoppel bars not only Lupian from pressing her claim, but bars the Trustee as well.

## II. Discussion

There's no doubt that, as a general rule, a debtor who neglects to disclose a contingent and unliquidated claim in a bankruptcy petition is judicially estopped from pursuing that claim after being discharged from bankruptcy. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."). The Ninth Circuit in *Hamilton* was also clear—and this is relevant to Lupian's representation that Waisbren was merely researching her claim when he sent the demand letters—that "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a *potential* cause of action exists during the pendency of the bankruptcy." *Id.* at 784 (emphasis added).

Judicial estoppel may be invoked for at least two reasons. The first is to prevent a party from gaining an advantage in litigation by taking shifting and inconsistent positions. *Id.* at 782. The second is to preserve the orderly administration of justice and the dignity of judicial proceedings themselves. *Id.* The Ninth Circuit in *Hamilton* put more emphasis on the latter:

> The rationale for [invoking judicial estoppel] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete. Id.* at 785 (quoting *In re Coastal Plains*,

179 F.3d 197, 208 (5th Cir. 1999) (emphasis in original)).

The problem for Defendants, which their reply brief more or less concedes, is that the caselaw they rely on mostly involves *debtors*, not the bankruptcy trustee, who attempt to pursue a claim they didn't disclose during their bankruptcy. *See, e.g.*, *Eastman v. Union Pacific Railroad Co.*, 493 F.3d 1151, 1160 (10th Cir. 2007) ("A discharge in bankruptcy is sufficient to establish a basis for judicial estoppel, even if the discharge is later vacated. Allowing [the debtor] to back up and benefit from the reopening of his bankruptcy only after his omission had been exposed would suggest that a debtor should consider disclosing potential assets only if he is caught concealing them.") (emphasis added) (internal quotations and citations omitted). Even in *Eastman* the court recognized that "the district court's application of judicial estoppel against the trustee was inappropriate, at least to the extent [the debtor's] personal injury claims were necessary to satisfy his debts. This is because at the time of the court's decision, the trustee as the real-party-in-interest had no engaged in contradictory litigation tactics." *Id.* at 1155 n.3.

Indeed, *Hamilton* speaks to post-bankruptcy claims a debtor asserts "for his own benefit." The facts here are slightly different. Lupian moved to re-open her bankruptcy when she wanted to pursue a claim against Defendants, and she suggested that a trustee be appointed because the claim isn't exempt; moreover, it is that trustee, representing the creditors' interest, who is the plaintiff in this case. There may be something in this case for Lupian, ultimately, but at this point she's not even a named party. At least one court has taken this distinction between the debtor and trustee to be meaningful, and held that "the *Hamilton* reasoning does not apply to situations where the bankruptcy trustee is pursuing the nondisclosed action." *Wood v. Household Finance Corp.*, 341 B.R. 770, 774 (W.D. Wash. 2006).

The court in *Wood*, acknowledging that the Ninth Circuit hadn't spoken to the distinction, found guidance in two Courts of Appeals decisions. The first was *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004), in which the Eleventh Circuit held that a discrimination claim was an asset of the bankruptcy estate and that the trustee, as the real

party in interest, had never taken an inconsistent position that justified the application of judicial estoppel. *Id.* at 1272. The second case was *Biesek v. Soo Line Railroad Co.*, 440 F.3d 410 (7th Cir. 2006). In *Biesek*, Judge Easterbrook labeled as a "lie" a debtor's failure to list a worker's compensation claim on his schedule of assets, and further said it couldn't have been inadvertent because a previous settlement offer, "if accepted, made Biesek solvent, and he would have been required to satisfy all of his debts." *Biesek*, 440 F.3d at 411. Nonetheless, Judge Easterbrook recognized that applying judicial estoppel to a claim that is essentially the creditors' isn't the proper course:

> Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors. Biesek's nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his FELA claim would complete the job by denying creditors even the right to seek some share of the recovery. Yet the creditors have not contradicted themselves in court. They were not aware of what Biesek has been doing behind their backs. Creditors gypped by Biesek's maneuvers are hurt a second time by the district judge's decision. Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application. Instead of vaporizing assets that could be used for the creditors' benefit, district judges should discourage bankruptcy fraud by revoking the debtors' discharges and referring them to the United States Attorney for potential criminal prosecution.
>
> Decisions that have relied on judicial estoppel assume that the tort claim belongs to the debtor. Only then is one person on both sides of the same issue . . . . *Id.* at 413.

Defendants try to argue that *Biesek* is on their side because the Seventh Circuit actually affirmed the application of judicial estoppel on summary judgment, but that's misleading. The Seventh Circuit affirmed in *Biesek*, as the Court reads the opinion, because the debtor was *still* the named plaintiff in the lawsuit and a stipulation (entered into on appeal) with the trustee that Biesek would hand over some of the proceeds of his lawsuit was too little too late. *Id.* at 413. Beyond this, Defendants' chief argument seems to be that judicial estoppel should apply because there are a number of ways in which Lupian could personally benefit from this lawsuit proceeding, considering it is potentially worth more than the amount of debt

discharged. Be that as it may, that argument doesn't get them around the caselaw such as *Hamilton*, *Wood*, *Parker*, and *Biesek* suggesting that when a trustee pursues an undisclosed claim on behalf of creditors the estoppel analysis is fundamentally different. *See also Reed v. City of Arlington*, 650 F.3d 571, 579 (5th Cir. 2011) ("Absent unusual circumstances, an innocent bankruptcy trustee may pursue for the benefit of creditors a judgment or cause of action that the debtor—having concealed that asset during bankruptcy—is himself estopped from pursuing."*).* In essence, Defendants want to invoke "judicial integrity" as a kind of trump to punish Lupian, even though creditors will potentially suffer and a defendant who has allegedly broken the law will potentially escape liability. That is too narrow of a view in the Court's judgment.

Perhaps the most significant case in this space, or at least the most instructive for the Court, is the Ninth Circuit's recent opinion in *Ah Quin v. County of Kauai Dep't of Transp.*, 733 F.3d 267 (9th Cir. 2013). The court first acknowledged the "basic default rule" in the bankruptcy context that "[i]f a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action," at least where there's no allegation from the plaintiff-debtor that the omission was inadvertent or a mistake *Id.* at 271. It also acknowledged its previous holding that "the reopening of a bankruptcy case is generally irrelevant to the analysis of judicial estoppel," again assuming there has been no inadvertence or mistake. *Id.* at 273. But then it doubted, and ultimately rejected as a hard-and-fast rule, that latter principle. The reopening of a bankruptcy, it held, impacts the traditional three-factor test for application of judicial estoppel in a way that cuts against estoppel, and moreover when a bankruptcy has been reopened "the application of judicial estoppel . . . operates to the detriment primarily of innocent creditors and to the benefit of only an alleged bad actor." *Id.* at 275. *Ah Quin* isn't *exactly* on point here, to be sure. The debtor *was* the plaintiff in the case, not the trustee, and the specific holding in the case was that before a court can apply judicial estoppel to a claim not disclosed in bankruptcy, it has to take a broader, fact-intensive view of inadvertence and mistake if the bankruptcy is reopened and can't merely presume deceit

- 9 -

10cv2270

was the motive—a holding that isn't exactly implicated here. *Id.* at 276. Nonetheless, *Ah Quin* has to be read as a case that is charitable to the plaintiff-debtor by making it harder to apply judicial estoppel to undisclosed claims, and the Court has to reason that the Ninth Circuit would be even more charitable to a *trustee* plaintiff who wasn't responsible for an undisclosed claim and is actually poised to pursue it in the interest of creditors.

Having considered the parties' respective briefs and the caselaw, the Court finds that the presence and role of the trustee in this case changes the analysis fundamentally, and the general rule that undisclosed claims can't be later pursued does not apply. Defendants' only rebuttal to this, knowing that no case applies judicial estoppel to a trustee's claim, is that Lupian can still benefit from the trustee's efforts. That rebuttal is insufficient. First, as the Court has said, that's an opportunistic argument that potentially lets Defendants off of the hook for their own alleged wrongdoing, *and* it fails to take the creditors' interests seriously. Second, to the extent any recovery on the claim exceeds what the creditors are entitled to or is exempt—Lupian's amended petition claims $20,825 of her claim is exempt (Mot. for SJ, Ex. 8)—it's plausible that principles of judicial estoppel could block Lupian from sharing in that recovery or invoking an exemption. *See Parker*, 365 F.3d at 1273 n.4 ("[I]n the unlikely scenario where the trustee would recover more than an amount that would satisfy all creditors and the costs and fees incurred, then, perhaps judicial estoppel could be invoked by the defendant to limit any recovery to only that amount and prevent an undeserved windfall from devolving on the non-disclosing debtor."). Third, the Court can't ignore the holding of *Ah Quin* that, even when the debtor is still the plaintiff, the mere act of reopening a bankruptcy changes the judicial estoppel analysis in the debtor's favor. *Ah Quin*, 733 F.3d at 274. In fact, it's possible to read the caselaw to suggest that when the party pursuing a previously undisclosed claim is the trustee rather than the original debtor, the judicial estoppel analysis doesn't even come into play. The court in *Wood* for example, concluded that "it is not necessary to consider estoppel" where "plaintiff trustee has not abandoned the case . . . and it remains an asset of the bankruptcy estate." *Wood*, 341 B.R. at 774. Likewise, the Eleventh Circuit in *Parker* concluded that where a trustee was pursuing a claim

"judicial estoppel should not be applied at all." *Parker*, 365 F.3d at 1268.

By the Court's lights, the only basis on which judicial estoppel can be applied on the facts of this case is if the *trustee* was complicit in Lupian's alleged deception such that *it* can be accused of taking inconsistent positions. There is no firm evidence of that, and certainly not enough to grant summary judgment to Defendants. It is somewhat unsettling that Waisbren originally represented Lupian against Defendants and didn't advise her to amend her bankruptcy petition, and is now representing the trustee, but the fact is that Waisbren wasn't Lupian's bankruptcy counsel, and the trustee herself, as far as the Court can tell, has never taken the position that Lupian had no claim against Defendants.

## III.   Conclusion

Lupian really makes two arguments here against summary judgment.

The first is that she never actually had a claim against Defendants until after she was discharged from bankruptcy, and therefore it wasn't inconsistent to not disclose the claim in her petition and later pursue it. That argument is bad, and almost offensively so. The demand letters Waisbren sent to Defendants in May and June of 2010, while Lupian's bankruptcy was still pending, unambiguously asserted a claim and sought a settlement to avoid the drain of litigation. For Waisbren to now say he was really just investigating the viability of Lupian's claims up through October 2010 is disingenuous. (Waisbren Decl. ¶¶ 9–10.) The Court also doesn't believe that Lupian was mostly out of the loop, as she claims, until a complaint was filed. (Lupian Decl. ¶ 9.) She must have been copied on the demand letters, or else seen them, and she must have spoken with Waisbren at some length so that he could calculate the value of her claim. Finally, there is something suspicious in Lupian not attempting to reopen her bankruptcy and amend her petition until two months *after* Defendants notified Waisbren that they would invoke judicial estoppel to block her claim, while in her motion to reopen her bankruptcy Lupian claimed that it was bankruptcy counsel who told her the claim was an asset of her estate and had to be disclosed. (Mot. for SJ, Ex. 6.) Were this first argument Lupian's only argument, the Court would likely enter summary judgment for Defendants, even on the heightened analysis mandated by *Ah Quin* when a

bankruptcy is reopened. Indeed, to the extent the trustee pursues Lupian's claim and prevails, the Court would look favorably upon a restriction of the proceeds to the creditors and the application of judicial estoppel to Lupian herself.

But this is not Lupian's only argument. Her second argument is that the trustee's role in this case changes everything. *It* is now the plaintiff, she is out of the case, and the trustee, who wasn't implicated in her original disclosures, is pursuing this claim presumably on behalf of creditors. For the reasons the Court has given above, that changes the judicial estoppel analysis—or takes this case out of the realm of judicial estoppel altogether. On the basis of this argument, Defendants' motion for summary judgment is **DENIED**.

It is curious to the Court that on summary judgment Defendants made an argument that they possibly could have made on a motion to dismiss—not to mention one that goes against their statement in the motion to dismiss that the trustee may be able to prosecute Lupian's claim---and that they haven't attacked the merits of the underlying claim at all. Maybe the parties have worked out a settlement of this case pending the Court's ruling on summary judgment, or maybe they intend to try that claim. Whatever the reason, the Court notes that this case is very old; it was filed in November 2010, and nothing meaningful happened until October 2012 when Defendants moved to dismiss Lupian. Within one week of the date this Order is entered, the parties shall contact the chambers of Magistrate Judge Gallo and schedule a status or settlement conference. The Court's inclination, if the parties do intend to try his case, is to hold a pretrial conference in mid to late February and a trial in March. If the parties have reached a tentative settlement, they must file a joint motion notifying the Court of this within one week of the date this Order is entered.

**IT IS SO ORDERED**.

DATED: February 3, 2014

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge